**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LYNTRICE STRAUSS, Plaintiff, | § § § § | CIVIL ACTION NO. 4:19-cv-00077 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| ANDREW SAUL, *Commissioner of the Social Security Administration*, Defendant. | § § § § § | |

**OPINION AND ORDER**
**AFFIRMING COMMISSION'S FINAL DECISION**

Plaintiff Lyntrice Strauss and Defendant Andrew Saul, Commissioner of the Social Security Administration, each seek summary judgment in the social security appeal pending before the Court. See Dkts 6, 7.

The Court grants the motion for summary judgment by the Commissioner and affirms his final decision. The motion for summary judgment by Strauss is denied.

1. Background

Strauss filed this action pursuant to Section 42 USC § 405(g) of the Social Security Act to seek judicial review of the Commissioner's denial of her application for disability benefits. Nancy Berryhill was the Acting Commissioner of the Social Security Administration at the time Strauss filed this case but no longer holds that position. Andrew Saul is now the Commissioner and was automatically substituted as the defendant. See 42 USC § 405(g); FRCP 25(d).

Strauss previously worked in various capacities for the United States Post Office until 2009. Tr 48. Strauss asserts that

she developed depression and posttraumatic stress disorder as a result of workplace sexual harassment she experienced at the United States Postal Service in 2006. Ibid. She stopped working in 2009 because she was no longer able to effectively perform her job duties and has not been employed since then. Ibid.

Strauss filed in January 2016 for disability insurance benefits as of July 10, 2014. Tr 40; see 42 USC § 423. She alleged disability due to depression and PTSD. Tr 316. The SSA denied her claim in April 2016 and again upon reconsideration in July 2016. Tr 40.

Strauss requested a hearing before an Administrative Law Judge. This occurred in May 2017. Tr 40, 87–152. The ALJ issued a decision in October 2017 finding that Strauss was not disabled and denying her benefits. Tr 37–59.

Strauss appealed internally. The Appeals Council denied her request for review in September 2018. The ALJ's adverse ruling thus became the Commissioner's final decision. Tr 15.

Strauss commenced this action in January 2019 to seek judicial review of the ALJ's decision pursuant to Section 42 USC § 405(g) of the Social Security Act. Dkt 1. She and the Commissioner have filed competing motions for summary judgment. Strauss asks the Court either to reverse and render an award of benefits in her favor, or to reverse and remand for further administrative proceedings. Dkt 6. The Commissioner asks the Court to enter judgment in his favor based on the record and disposition below, and to dismiss this cause at Strauss's cost. Dkt 7.

A certified copy of the entire administrative record is before the Court. Dkt 5. This includes documents related to the administrative process, the ALJ's decision, the transcript of the hearing before the ALJ, and Strauss's medical records.

    2. Legal standard

*As to the standard of review.* A court's review of the Commissioner's denial of disability benefits is limited to two inquiries. The first is whether the Commissioner applied the proper legal standard. The second is whether the Commissioner's decision is supported by substantial evidence. *Garcia v Berryhill*,

880 F3d 700, 704 (5th Cir 2018), citing 42 USC § 405(g); *Masterson v Barnhart*, 309 F3d 267, 272 (5th Cir 2002).

The reviewing court does "not re-weigh the evidence, try the questions *de novo,* or substitute [its own] judgment for the Commissioner's." *Masterson*, 309 F3d at 272. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." Ibid, citing *Newton v Apfel*, 209 F3d 448, 452 (5th Cir 2000). Under this standard, *substantial evidence* is that quantum of evidence being "more than a mere scintilla and less than a preponderance." *Masterson*, 309 F3d at 272 (citations omitted); see also *Biestek v Berryhill*, 139 S Ct 1148, 1154 (2019) (meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

*As to the disability determination standard.* A claimant has the initial burden of proving that she suffers from a disability. *Garcia*, 880 F3d at 704. The Social Security Act defines *disability* as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

The ALJ applies a five-step sequential analysis in determining disability status. 20 CFR § 404.1520(a)(4). The Fifth Circuit has recently reiterated the ALJ's task as follows:

- o At step one, to consider the applicant's "work activity, if any." 20 CFR § 404.1520(a)(4)(i). A person performing "substantial gainful activity" is not disabled. 20 CFR § 404.1520(b).
- o At step two, to consider "the medical severity of [the applicant's] impairment(s)." 20 CFR § 404.1520(a)(4)(ii). A person who does not have a "severe impairment" is not disabled. 20 CFR § 404.1520(c).
- o At step three, to consider whether the person's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations. 20 CFR § 404.1520(a)(4)(iii). A person who "meets or

- equals" the enumerated impairments is disabled. 20 CFR § 404.1520(d).
  - At step four, to consider whether the person can perform the same work done in the past. 20 CFR § 404.1520(a)(4)(iv). A person capable of doing such work is not disabled. 20 CFR § 404.1520(f).
  - At step five, to consider the applicant's "residual functional capacity and . . . age, education, and work experience to see if [the applicant] can make an adjustment to other work." 20 CFR § 404.1520(a)(4)(v). A person who can adjust to other work is not disabled, but a person who cannot is disabled. 20 CFR § 404.1520(g).

*Schofield v Saul*, 950 F3d 315, 317–18 (5th Cir 2020).

Between step three and step four, the ALJ assesses the applicant's residual functional capacity. See 20 CFR § 404.1520(a)(4). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v Astrue*, 433 F App'x 241, 245 (5th Cir 2011) (unpublished), citing 20 CFR § 404.1545. The ALJ uses the RFC assessment at the fourth and fifth steps to determine if the applicant could perform past relevant work and can adjust to other work. 20 CFR § 404.1520(e).

The applicant bears the burden through the first four steps, but the burden shifts to the Commissioner at the fifth. *Garcia*, 880 F3d at 704 (citations omitted).

### 3. The decision by the Administrative Law Judge

The ALJ performed the standard five-step analysis. The ALJ noted that Strauss failed to meet her burden at step three but continued through step five. The ALJ ultimately concluded that Strauss is not disabled and denied her benefits.

*As to step one*, the ALJ found Strauss met her burden. Specifically, the ALJ determined that Strauss did not engage in substantial gainful activity after her alleged onset date of July 10, 2014 through to her last-insured date of December 31, 2014. Tr 42–43.

*As to step two*, the ALJ also found that Strauss met her burden. The ALJ determined that Strauss had severe impairments of lumbar degenerative disc disease, sacroiliitis, obesity, pain disorder, major depression, and PTSD. Tr 43.

*As to step three*, the ALJ found that Strauss failed to meet her burden. Though severe, the ALJ determined that her impairments did not meet or equal the severity of a listed impairment. Tr 43–46.

*As to the RFC assessment*, the ALJ found that Strauss had the residual functional capacity to perform light work, except that she was limited to "occasionally climbing ramps and stairs but never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; and occasionally overhead reaching with the left upper extremity. Additionally, the claimant was limited to simple, routine, and repetitive tasks, not performed in a fast paced work environment, involving only simple work-related decisions and, in general, relatively few changes in a routine work setting. The claimant was also limited to occasional interaction with supervisors, coworkers, and the general public." Tr 46.

*As to step four*, the ALJ found that Strauss met her burden. The ALJ determined that Strauss could not perform her past work as an expeditor or as a customer-service representative. Tr 51–52.

*As to step five*, the ALJ found that Strauss could make an adjustment to other work, and so was not disabled. The ALJ considered Strauss's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, finding that Strauss could make a successful adjustment to other work that exists in significant numbers in the national economy. Tr 52–53. These for instance included work as an office cleaner, mail clerk, or clothing sorter. Tr 53.

4. Analysis

The Commissioner requests the Court enter summary judgment in his favor and affirm the ALJ's decision. Strauss to the contrary asserts that the ALJ erred in four ways:

- o In failing to adopt the opinion of Dr. Jenkins, Strauss's testifying psychology expert;
- o In not obtaining an updated medical opinion, constituting a failure to properly develop the case;
- o In not determining whether Strauss could maintain employment; and
- o In rejecting evidence favorable to Strauss from Dr. Kalimuddin, a former treating physician of Strauss.

The Court finds these arguments unpersuasive under the demanding standard of review that Strauss faces.

  a. The opinion of the testifying psychology expert

Dr. Jenkins was Strauss's therapist and psychologist. Tr 47. She began treating Strauss in November 2015 for symptoms associated with PTSD and major depressive disorder. Tr 47, 133. She testified at the hearing that Strauss's prognosis to be able to perform any full-time work was poor due to depression, anxiety, and problems focusing. Tr 139. She also testified that Strauss met the listing for trauma and stress-related disorders. Tr 145–146.

Strauss asserts the ALJ erred in giving only partial weight to Dr. Jenkins's opinion. Specifically, Strauss asserts that the ALJ directly contradicted Dr. Jenkins's opinion by finding that Strauss had the residual functional capacity to perform light work with minimal mental restrictions. Dkt 6 at 5.

Generally speaking, the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability. See *Newton*, 209 F3d at 455; *Ward v Barnhart*, 192 F App'x 305, 308 (5th Cir 2006) (unpublished). But it is settled law that the ALJ "has sole responsibility for determining a claimant's disability status." *Newton*, 209 F3d at 455 (quotations omitted). The Fifth Circuit has made clear that the ALJ may assign little or no weight to a treating physician's opinion when good cause is shown—for instance where the opinion is conclusory, unsupported by medically acceptable techniques, or is otherwise unsupported by the evidence. Id at 455–56.

When the ALJ determines that such opinion is not entitled to controlling weight, the regulations require the ALJ to consider several factors in deciding how much weight to give the opinion:

- o The physician's length of treatment of the claimant;
- o The physician's frequency of examination;
- o The nature and extent of the treatment relationship;
- o The support of the physician's opinion afforded by the medical evidence of record;
- o The consistency of the opinion with the record as a whole; and
- o The specialization of the treating physician.

CFR § 404.1527(c) (for claims filed on or after March 27, 2017, the rules in § 404.1520c apply); see also *Newton*, 209 F3d at 456. But the ALJ need not consider all of these factors where competing first-hand medical evidence exists, and the ALJ finds as a factual matter that one doctor's opinion is better substantiated than that of another. *Ward*, 192 F App'x at 308 (citations omitted).

Review of the record indicates that the ALJ fully reviewed and considered Dr. Jenkins's opinion in light of competing first-hand medical evidence and the above factors. It was thus within the ALJ's discretion to find Dr. Jenkins's testimony unpersuasive.

The ALJ determined that "Dr. Jenkins' opinion that the claimant is unable to work is not supported by her treatment records, which reveal that her questionnaire responses were based heavily on the claimant's subjective reports of symptoms rather than clinical findings that were observed during their therapy sessions." Tr 51; see Tr 668–701 (Dr. Jenkins's treatment notes). The Fifth Circuit has previously held that a physician's opinion is not entitled to great weight when it merely documents the patient's subjective complaints, rather than what the physician personally observes. See *Greenspan v Shalala*, 38 F3d 232, 237–38 (5th Cir 1994). The Court finds that this entitled the ALJ to accord Dr Jenkins's opinion less weight.

Other record evidence supports the ALJ's determination. For instance, the ALJ also observed that the extreme degrees of limitation in mental functioning identified by Dr. Jenkins were inconsistent with the record as a whole. The ALJ found that the record included the opinion of Dr. Pellegrini, who conducted a psychological consultative examination of Strauss in March 2014.

She opined that Strauss has no limitation either in the ability to interact appropriately with others or to respond appropriately to usual work situations and to changes in routine work setting. Tr 50. The ALJ could appropriately rely on this competing medical evidence. See *Bradley v Bowen,* 809 F2d 1054, 1057 (5th Cir 1987) (concluding that ALJ may rely on well-supported consultative examiner's opinion over poorly supported treating physician's opinion).

The ALJ also relied on Strauss's testimony regarding her ability to function as an undergraduate and graduate student despite her depression and PTSD symptoms. Tr 45. The ALJ could properly rely on this evidence in rejecting Dr. Jenkins's testimony. See *Richard ex rel ZNF v Astrue*, 480 F App'x 773, 779 (5th Cir 2012) (unpublished) (upholding ALJ's rejection of treating physician's opinion on intellectual functioning because claimant was able to function in school).

The Commissioner also points to additional evidence in the record that contradicts Dr. Jenkins's opinions that Strauss could not appropriately interact with the general public nor manage herself. Dkt 7-1 at 6. For example, Strauss worked in prison and nursing home ministries in her church, took care of her own personal needs and grooming, did laundry, and cooked simple meals. Tr 111, 331.

The Court finds substantial evidence to support the ALJ's evaluation of Dr. Jenkins's opinion in light of the entire record.

  b. Need for an updated medical opinion

As just noted, the ALJ did not give controlling weight to the opinion of Dr. Jenkins. Strauss thus asserts that the ALJ violated Social Security Ruling 96-6p and needed to review the context of the record with the assistance of a qualified medical expert. She contends that the ALJ's failure to obtain an updated medical expert opinion constitutes a failure to properly develop the case. In her reply, Strauss varies the argument slightly, asserting that the ALJ abused his discretion by interpreting the evidence without proper guidance from a trained medical specialist. Dkt 8 at 3.

Strauss's reliance on SSR 96-6p is itself improper. The Social Security Administration rescinded it on March 27, 2017, replacing

it with SSR 17-2p. See Social Security Administration, Evidence Needed by Adjudicators at the Hearings & Appeals Council Levels of the Admin. Review Process to Make Findings About Med. Equivalence, 17-2P 2017 WL 3928306. Only the latter ruling was in effect when the ALJ made his determination on October 24, 2017.

Considering instead SSR 17-2p, it plainly indicates that the ALJ is not required to seek medical expert advice. It states that "adjudicators at the hearings level may"—not *must*—"ask for and consider evidence from medical experts (ME) about the individual's impairment(s)." Id at * 3. And it dictates that if the ALJ believes that the evidence "does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," then it is "not require[d] . . . to obtain ME evidence" when making the finding "that the individual's impairment(s) does not medically equal a listed impairment." Id at * 4.

At base, Strauss complains that the ALJ improperly came to his own conclusion as to her residual functional capacity for work. But that again is precisely the ALJ's task. "Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v Astrue*, 706 F3d 600, 602–03 (5th Cir 2012) (citations omitted).

The record indicates that the ALJ carefully considered Strauss's medical record to determine her residual functional capacity for work. The ALJ was under no obligation to seek further medical expert advice for the very reason that "experienced ALJs can draw their own conclusions based on accurate medical information." *Barrett v Berryhill*, 906 F3d 340, 343 (5th Cir 2018). As such, the ALJ's failure to seek an updated medical opinion does not constitute a failure to properly develop the case.

### c. Ability to maintain employment

Typically, "the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Frank v Barnhart*, 326 F3d 618, 619 (5th Cir 2003) (per curiam). But at least in one situation, the Fifth Circuit

requires that the ALJ make a separate finding "that the claimant can hold whatever job he finds for a significant period of time." *Watson v Barnhart*, 288 F3d 212, 217 (5th Cir 2002), quoting *Singletary v Bowen,* 798 F2d 818, 822 (5th Cir 1986). That situation is when "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F3d at 619. In the absence of such a showing, the claimant's ability to maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment. *Perez v Barnhart*, 415 F3d 457, 465 (5th Cir 2005).

In this regard, "[i]t is not enough for a claimant to assert, in general, that the impairment waxes and wanes; the claimant must *demonstrate* that her particular impairment waxes and wanes." *Williams v Colvin*, 2016 WL 541079, *12 (SD Tex) (emphasis added) (citations and quotations omitted). The *Frank* court gave an example of evidence that might demonstrate a particular impairment waxes and wanes: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Frank*, 326 F3d at 619.

Strauss has not offered medical evidence specifically indicating she could work temporarily at a particular level of exertion but could not sustain work at that level. Nor has she offered evidence that her condition truly *waxes and wanes* in frequency or intensity such that her ability to maintain employment was not adequately taken into account in her residual functional capacity determination. *Perez*, 415 F3d at 465–66.

She instead asserts that the intermittent nature of her impairment is "obvious, especially in light of [Dr. Jenkins's] opinion regarding anxiety, mood swings, the inability to tolerate stress and the likelihood of missing four days of work per month, even in an unskilled work setting." Dkt 8 at 3. But as discussed above, the ALJ afforded little weight to Dr. Jenkins's testimony, given that it was contradicted by the psychological consultant examiner's opinion, was inconsistent with the record as a whole, and was based primarily on Strauss's own self-reporting rather

than clinical findings observed during their therapy sessions. Tr 51. Further, the ALJ's RFC assessment took Strauss's impairments into account and limited her to only light work. Tr 46. See *Burns v Astrue*, 2015 WL 136558, *18 (SD Tex).

The Fifth Circuit also rejected similar evidence in *Perez v Barnhart*. The claimant's testimony there indicated that he had good days and bad and that his pain varied in intensity between epidural injections. Another expert witness also testified that, in his opinion, the claimant would not be able to work on a reliable basis. Even so, the Fifth Circuit found that such evidence "does not come close to meeting the standard required by *Frank*." 415 F3d at 466.

Given the holding in *Frank*, Strauss's argument is insufficient to demonstrate that her particular impairment waxes and wanes. And given the lack of record evidence that Strauss's impairment "waxes and wanes," the Court finds that the ALJ was not required to separately consider whether Strauss could maintain employment.

### d. Evidence from the former treating physician

Dr. Kalimuddin is one of Strauss's former treating physicians. She filled out a work-related questionnaire in 2010 that Strauss submitted as part of the record before the ALJ. Tr 390–399. The ALJ decision did not reference Dr. Kalimuddin or this questionnaire.

Strauss points to Dr. Kalimuddin's statement in the questionnaire that she would likely be absent from work "about 4 days per month." Tr 399. She asserts that the ALJ erred by failing to meaningfully examine or explain his rejection of this evidence.

An ALJ is not required to specifically articulate the supporting evidence for the decision or to discuss the rejected evidence. See *Falco v Shalala*, 27 F3d 160, 163 (5th Cir 1994). Only when the evidence clearly favors the claimant must the ALJ articulate reasons for rejecting it. Ibid.

The questionnaire on its face does not clearly favor Strauss. It covered sixteen questions as to "mental abilities and aptitudes" related to "unskilled work," four as to "semiskilled and skilled

work," and five as to "particular types of jobs." As to each, the response was either "unlimited or very good" or "limited but satisfactory." Tr 397–98. This included her ability to do semiskilled and skilled work, her ability to get along with coworkers, and her ability to carry out very short and simple instructions. Ibid.

Given that Dr. Kalimuddin's questionnaire does not clearly favor Strauss, the ALJ was not obligated to articulate his reasons for rejecting it. The Court finds no error.

5. Conclusion

No reversible error appears. The Court finds that substantial evidence in the record supports the decision of the ALJ.

The Court DENIES Strauss's motion for summary judgment.

The Court GRANTS the Commissioner's competing motion for summary judgment.

The Court AFFIRMS the final decision of the Commissioner.

SO ORDERED.

Signed on March 25, 2020, at Houston, Texas.

*[signature: Chas R Eskridge III]*

Hon. Charles Eskridge
United States District Judge